# LAW OFFICES OF JOEL B. RUDIN, P.C.

CARNEGIE HALL TOWER
152 WEST 57TH STREET
EIGHTH FLOOR
NEW YORK, NEW YORK 10019

TELEPHONE: (212) 752-7600
FACSIMILE: (212) 980-2968
E-MAIL: jbrudin@rudinlaw.com

JOEL B. RUDIN

JACOB "COBY" LOUP
DAVID E. RUDIN

DAVID S. KEENAN
(OF COUNSEL)
SIDURI BECKMAN
(PARALEGAL)

May 2, 2022

**Via ECF**
The Honorable Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Sami v. City of New York, et al.*
              Case No. 21-cv-2785 (WFK)(CLP)

Dear Judge Pollak:

Pursuant to your Honor's rules, I am writing briefly to reply to Defendants' opposition to Plaintiff's motion to compel.

*First,* Defendants object to providing an affidavit on the basis that it is unclear what records are presumed to exist apart from a summons issued by Officer Jonathan Molina. It is basic police practice to memorialize an arrest in an officer's memo book, call it into the command, and ultimately report it in an arrest report. Here, at least five unknown officers violently tackled Plaintiff, Ahmed Sami, from behind and beat him while he was restrained on the ground, and arrested his friends in a similar manner. Despite the presumed existence of the above documentation, plus the certainty that such a tumultuous event would be recorded on TARU videos or individual officers' body cameras, the City claims that no record of the arrests can be located. All of this is hard to believe, if someone has really been looking hard. Whoever that someone is should be identified, explain the completeness of the search, and take responsibility for the outcome. Otherwise all we have is a City attorney's vague references to anonymous investigators. If the reason reports and video footage cannot be located is because officers were instructed not to document their arrests but instead to hand them off to uninvolved other officers, because officers were allowed not to document their arrests, or because cameras were turned off to avoid recording brutality, this should be explained and affirmed under oath. Plaintiff is entitled to an explanation. The City represents that all videos from body worn cameras of officers in the area were reviewed, but does not reveal whether any such officers generated no footage. Nor does it explain how a tony area like Fifth Avenue and 63rd Street could possibly not have area surveillance cameras recording such an incident.

That ultimately a summons was issued is no answer. Plaintiff and his friends were treated like full arrestees: driven in a van, handcuffed, from Central Park to Brooklyn Central Booking, where mugshots were taken. That ultimately they were released with summonses after five to six hours does not explain or excuse the absence of records.

*Second,* Defendants suggest that Plaintiff's motion to compel was premature. Plaintiff asked Defendants for an affidavit from whoever conducted the purported search for the John Does in emails sent on March 11, March 16, March 18, March 24, and March 27, and in a phone call on April 1, and indicated that we were prepared to seek sanctions if necessary. Ultimately Plaintiff wrote the Court so it would have the issue before it during the scheduled May 3 status conference.

Defendants should not evade their obligations by trying to shift responsibility to Plaintiff to provide, not only his own photograph, but those of his non-party friends. Defendants know that, at a specific location at a specific time, 5-8 uniformed officers assaulted five civilians walking alongside a tall and broad white shirted officer. They know what Plaintiff was wearing and other physical attributes, have video showing Plaintiff's girlfriend Ms. Trevett and the white shirted officer, and should be able to find Plaintiff's mugshot taken while he was detained at Brooklyn Central Booking. The privacy of Mr. Sami and his friends, who were traumatized by a brutal attack and lengthy detention in filthy conditions with excruciatingly tight flexcuffs during Covid, outweighs the negligible use the photographs would serve.

*Finally,* the John Doe issue and discovery should not be further delayed by Defendants' talk of settlement. We've been down this road before. On September 29, 2021, at defense counsel's request, the Court ordered the parties to exchange focused discovery and have settlement discussions. On October 4, 2021, Plaintiff sent Defendants a detailed settlement demand letter, and provided legal fees incurred to date. On January 20, 2022, the day before the settlement conference, Defendants offered Plaintiff a *total* settlement that amounted to one third of our legal fees, with nothing left over for the client. Defense counsel agreed to convert the January 21, 2022 settlement conference to a scheduling conference because, in view of the Comptroller's settlement authorization, further talks would be futile. If Defendants are really now serious about settlement, Plaintiff will agree to a settlement conference, but that should not stop discovery. It is only because of having to produce discovery that Defendants are talking settlement at all.

Respectfully submitted,

/s/

David E. Rudin

cc: Matthew McQueen (by ECF)
    *Counsel for Defendants*